GEORGIANA MARTIN vs. WILLIAM F. GOLDEN & another.

Suffolk.    January 7, 1902. — February 28, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*False Imprisonment.    Joint Tortfeasors.*

In an action for unlawful imprisonment against a police officer and the keeper of a lockup jointly, it appeared, that the plaintiff was arrested by the defendant officer without any order of court and locked in a cell in the lockup where she was unlawfully detained for two days, no charge being preferred against her, that she then was released by order of the defendant keeper who had known of her arrest a few hours after it occurred, that by his order an officer other than the first defendant took her to a street near the lockup in order that she might take a street car and left her there, and that the defendant keeper of the lockup was also the chief of police of the city where the events occurred and had control of the lockup and the power to say whether the plaintiff should be kept there and when she should be released. The jury specially found, that the plaintiff was still under restraint by direction of the defendant keeper while going from the lockup to the car. *Held,* that the defendants could be held jointly liable for their unlawful detention of the plaintiff after the defendant keeper participated in the restraint, although not for the acts of the other defendant before that time, that the jury were warranted in finding that the plaintiff was kept in confinement by order of the defendant keeper after he learned of her arrest and in finding that the plaintiff was still under arrest while being escorted to the car by the defendant keeper's order.

TORT against a police officer and the keeper of the lockup in Chelsea, who also was the chief of police of that city, for assault and false imprisonment. Writ in the Municipal Court of the City of Boston dated September 18, 1900.

On appeal to the Superior Court the case was tried before *Richardson,* J. The findings of fact warranted by the evidence are stated by the court. At the close of the evidence the defendants requested the judge to instruct the jury as follows:

First. If the jury find that the plaintiff consented to her discharge from imprisonment, the verdict must be for the defendants. [This exception was waived.]

Second. The jury cannot find the defendant Drury liable because of anything which he did solely as keeper of the lockup.

. Third. If the jury find that the plaintiff was arrested by the defendant Golden, and that the defendant Golden wrongfully

neglected to bring or cause her to be brought before a proper court, and to make to that court a proper complaint against her, they cannot find the defendants jointly liable, because the defendant Drury kept the plaintiff detained in the lockup.

Fourth. If the jury find that the plaintiff was arrested by the defendant Golden, and that the defendant Golden wrongfully neglected to bring or cause her to be brought before a proper court, and to make to the court a proper complaint against her, they cannot find the defendants jointly liable, because of any action of the defendant Drury after or at the time of the plaintiff's discharge from the police station.

Fifth. The action of the defendant Drury in directing a police officer to go with the plaintiff, and show her the way to a car, or to the Chelsea Ferry, would not amount in law to an imprisonment of the plaintiff.

Sixth. On all the evidence in the case, the jury should return a verdict for the defendant Drury.

Seventh. On all the evidence in the case, the jury should return a verdict for the defendant Golden.

Eighth. On all the evidence in the case, the jury should return a verdict for the defendants.

All of these requests the judge refused to give, except as hereafter stated. As to the third, fourth and fifth of the above requests, the judge instructed the jury, that if officer Shannon was directed by the defendant Drury to keep the plaintiff "in custody and under his control, and imprisoned until they got the car, or to the street, wherever they were going, the jury might take that into account"; and that if the jury should find that the plaintiff "was under arrest while she walked from the office, I don't know but that it might be held that she could maintain an action for it, if that was done by the direction of Mr. Drury."

The judge further instructed the jury, that if the plaintiff was arrested, and taken to the station against her will, or by force, and there kept in confinement, or restrained of her liberty against her request, without her request, and against her will, it was within the power of the jury to find that that constituted an assault, and that the defendants were liable to her for any injury which she thereby sustained.

As to the second of the above requests, the judge said to the jury: " I am requested by the defendants to state to you that the jury cannot find the defendant Drury liable for anything which he did solely as keeper of the lockup. But I understand there is evidence tending to show that he was the party who had, or the person who had, the right to determine, when he was there, when persons should be put into custody, and when they should be released from custody or confinement there. If his office had been simply that of a servant who shut or opened the doors and turned the key, and in that sense was the keeper of the lockup, acting under the direction of somebody else, I should doubt — I think that instruction would be pertinent and would be proper; but as I understand it, there is evidence from which the jury may find, if they see fit, that Mr. Drury had more authority than an ordinary keeper of a lockup. He had authority, as I have stated, I think, so far as it appears, or at least there is evidence from which I think you may find — perhaps that is a better way to put it — that he had more authority than a simple turnkey, or keeper of the lockup; that he had charge of the prison, whatever it was, or the whole lockup, and had authority to decide who should be kept there, and who not, and released, when."

The judge further instructed the jury, " that if the original arrest in the street and taking to the station house was unlawful and improper, then Mr. Golden might be made liable for that, and possibly the consequences that directly followed from that; but I do not see how Mr. Drury could be made liable for that, and not until some point or period in the history of the transaction where he came in, so to speak, where he participated in the restraint. And I understand him to testify that he did not know anything about the arrest until forty minutes past six o'clock, or about that time, on said Tuesday morning; so that if the plaintiff seeks to hold both of these parties, inasmuch as there cannot be two different verdicts against the defendants, one against one and one against the other, but only one verdict as against both in this case, she cannot recover for anything whatever until Mr. Drury participated in the restraint, and that was not at least until after his arrival at the station on Tuesday morning."

The judge further asked the jury to answer the following question: "Was the plaintiff, after she left the station house on Thursday morning, under restraint by the officer, by the direction of Mr. Drury, when she went to the car?" The jury answered this question in the affirmative, and returned a general verdict against both defendants in the sum of $200. The defendants alleged exceptions to the various rulings and instructions stated above.

*S. R. Cutler*, for the defendants.

*B. B. Dewing*, for the plaintiff.

HAMMOND, J. The evidence in this case would warrant a finding that the plaintiff was unlawfully arrested by the defendant Golden, a member of the police force, early in the morning of Tuesday, August 21, 1900; that she was carried by him to the lockup at the police station, and by his direction was there locked in a cell where she was unlawfully held until about eleven A. M. on the following Thursday, when she was released from the cell and, by direction of the defendant Drury, was taken by one Shannon to Williams Street near the police station, for the purpose of taking a street car, and was there left by him; that the defendant Drury, who was the chief of police, first knew of her arrest a few minutes before six A. M., on the day she was arrested, and that from that time until Shannon left her in the street she was thus under arrest with the knowledge and consent of both defendants; and that during no part of the time was any complaint preferred in court against her. The evidence would warrant the further finding that Drury during all this time had the control of the lockup and had the authority to say whether the plaintiff should be kept there and when she should be released. She was there by no order of court, and she was brought before no court. This makes a case for the jury, who, if they found the facts to be as above stated, were warranted in bringing in a verdict for the plaintiff as against both defendants. *Bath* v. *Metcalf*, 145 Mass. 274, and cases cited. The first, (this request was waived at the argument before us,) sixth, seventh and eighth requests were therefore properly refused. The jury specially found that the plaintiff was still under restraint by direction of Drury while going from the station to the car. This, therefore, was a continuation of the

same imprisonment. While the judge dealt somewhat vaguely with the subject matter of the second, third, fourth and fifth requests, still we see no error in the manner in which they were treated.

As to joint liability, the instruction to the jury was that if the plaintiff sought to hold both defendants she could not "recover for anything whatever until Drury participated in the restraint, and that was not at least until after his arrival at the station on Tuesday morning." This was correct. *Bath* v. *Metcalf, ubi supra.*

The instructions to the jury as to the assault, so far as they defined an assault, were in accordance with the well established rules on that matter and were correct; and, so far as they affected the question of damages, worked no injury to the defendants in view of the very decided ruling by the judge that no joint damages could be assessed against the defendants for anything which occurred before Drury participated in the restraint.

*Exceptions overruled.*